UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DETRAIL L. WILLIAMS,
    Petitioner,

vs.                         Case No.:  4:23cv43/WS/ZCB

RICKY D. DIXON,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner, Detrail Williams, has filed a habeas corpus petition under 28 U.S.C. § 2254.  (Doc. 1).  Respondent has moved to dismiss, arguing that the petition was untimely filed.  (Doc. 13).  Petitioner has opposed the motion. (Doc. 15).  For the reasons below, Respondent's motion to dismiss should be granted.[1]

## I.    Background

On November 29, 2012, three-year-old L.P. reported to her mother that Petitioner had sexually abused her.  (Doc. 13-1).  L.P. reported that Petitioner took her into the bedroom, threw her on the bed face down,

---

[1] The Court believes this matter can be resolved based on the pleadings and attachments without an evidentiary hearing.  Rule 8(a), Rules Governing Section 2254 Cases.

1

and placed a blanket over her head.  Petitioner then put Vaseline on his fingers and inserted them into her "bottom."  L.P. pointed to her vagina when she said "bottom."  L.P. told Petitioner that he was hurting her, but he told her to shut up.  L.P. relayed the same information during a forensic interview with the Child Protection Team.  She was also examined by a doctor.  The doctor tested L.P. for Chlamydia, and the result was positive.  Law enforcement obtained a search warrant for a penile swab of Petitioner.  Petitioner also tested positive for Chlamydia.

Petitioner was charged in Leon County Circuit Court with Sexual Battery on a Child under 12 years of age.  (Doc. 13-2).  Petitioner pleaded no contest to a reduced charge of attempted sexual battery, pursuant to a written plea agreement.  (Doc. 13-6).  As part of the agreement, the prosecution agreed to a sentence of twenty years in prison followed by ten years of sex offender probation.  The state court sentenced Petitioner in accordance with the plea agreement.  (Doc. 13-8; Doc. 13-18 at 6-20).[2]

---

[2] The order placing Petitioner on sex offender probation was filed on December 7, 2016.  (Doc. 13-9).  That order erroneously indicated that Petitioner had entered a guilty plea, instead of a no contest plea.  (*Id.*). Petitioner pointed out the error in a motion to correct illegal sentence filed on September 7, 2021, under Florida Rule of Criminal Procedure 3.800(a).  (Doc. 13-17).  The trial court granted the motion only as to that error and directed the Florida Department of Corrections to file a

Two weeks later, Petitioner moved to withdraw his plea. (*see* Doc. 13-10). The trial court denied the motion on December 14, 2016. (*Id.*). Petitioner did not timely seek direct appellate review. Nor did he file any application for state postconviction relief within one year of his conviction becoming final.

On August 9, 2021, Petitioner filed a petition for belated direct appeal in the Florida First District Court of Appeal (First DCA). (Doc. 13-12). The First DCA dismissed that petition. (Doc. 13-25). Next, Petitioner filed several more state applications for postconviction relief and for postconviction DNA testing. (Docs. 13-19 through 13-24, 13-28 through 13-43). All of those motions were unsuccessful, except for the correction of the scrivener's error in the probation order described *supra* in note 2.

Petitioner then came to federal court and filed the current 28 U.S.C. § 2254 habeas corpus petition on January 20, 2023. (Doc. 1 at 1). Respondent has sought dismissal of the petition as untimely. (Doc. 13). Petitioner opposes dismissal. (Doc. 1 at 15-16; Doc. 15 at 2-3).

---

corrected order reflecting that Petitioner entered a no contest plea, not a guilty plea. (Doc. 13-18). The court denied Petitioner's other challenges to his sentence. (*Id.*).

## II.   Discussion

### A.   The § 2254 petition was untimely filed.

An inmate in state custody has one year to file a § 2254 habeas petition.  *See* 28 U.S.C. § 2244(d)(1).  The one year clock starts running from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The parties appear to disagree about which event started the one-year clock in Petitioner's case.  Respondent contends the date of the final judgment (§ 2244(d0(1)(A)) started the one-year clock.  (Doc. 13 at 12).  For his part, Petitioner says that his petition is "predicated upon actual innocence and *Brady* violation filed within one year time limit for the denial of the DNA testing motion . . . ."  (Doc. 1 at 15-16).  He also suggests

that the federal clock restarted when the trial court corrected two orders, an order designating Petitioner a sexual predator and an order placing him on sex offender probation. (Doc. 15 at 2-3).

The Court will first explain why § 2244(d)(1)(A) is the trigger that started the limitations period. The Court will then explain why the state court's correction of two orders did not restart the limitations period. Next, the Court will explain that Petitioner filed his § 2254 petition after the one-year limitations period expired. And lastly, the Court will discuss why the "fundamental miscarriage of justice" exception to the time bar does not open the gateway for a merits review of Petitioner's habeas claims.

> **1.    The appropriate trigger for the limitations period is § 2244(d)(1)(A).**
>
> **a.    The trigger under section 2244(d)(1)(A) is January 13, 2017.**

Under § 2244(d)(1)(A), the trigger for the federal limitations period is the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. In Florida, defendants are required to commence direct appeals within thirty days of the judgment and sentence. Fla. R. App. P. 9.140(b)(3). A timely

motion to withdraw a plea tolls the time for filing the notice of appeal, so the judgment and sentence are not deemed rendered until an order disposing of the motion to withdraw plea is filed. Fla. R. App. P. 9.020(h)(1)-(2)(A).

Here, the trial court denied Petitioner's motion to withdraw his plea on December 14, 2016 (Doc. 13-10). So, Petitioner had thirty days from that date—i.e., until January 13, 2017—to file a direct appeal. But Petitioner did not file a direct appeal. His judgment, therefore, became final on January 13, 2017. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that, for petitioners who do not pursue direct review to the U.S. Supreme Court, the judgment becomes final when the time for pursuing direct review in the Supreme Court or state court expires); *Nunnally v. Inch*, No. 3:20cv6018/LC/MJF, 2021 WL 3056485, at 2 & n.4 (N.D. Fla. June 24, 2021) (holding that petitioner's judgment became final at the expiration of the thirty-day window to directly appeal trial court's order denying motion to withdraw plea), *adopted by* 2021 WL 3054906 (N.D. Fla. July 20, 2021).[3]

---

[3] *See also, e.g., Grant v. Inch*, No. 5:20cv108/RV/EMT, 2021 WL 968957, at \*2 (N.D. Fla. Feb. 2, 2021) (same holding as *Nunnally*), *adopted by* 2021 WL 964043 (N.D. Fla. Mar. 15, 2021); *Worthey v. Inch*, No.

### b. Petitioner does not qualify for a later trigger under § 2244(d)(1)(D).

Petitioner incorrectly argues that the trigger for the limitations period should be 28 U.S.C. § 2244(d)(1)(D). "Section 2244(d)(1)(D) gives state prisoners the benefit of a later start if the vital facts could not have been known by the date the appellate process ended." *Nordelo v. Sec'y, Fla. Dep't of Corr.*, 635 F. App'x 636, 639 (11th Cir. 2015) (cleaned up). Under that provision, the one-year clock for filing a § 2254 petition starts ticking when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes the legal significance of those facts. *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1157 (11th Cir. 2014). And because "due diligence is equivalent to a rule of inquiry notice," the prisoner is obligated to make reasonable efforts to discover the facts that are relevant to his habeas claims. *Id.* at 1156-57.

Here, Petitioner's habeas claims are predicated on the fact that DNA testing was not done on a blanket/comforter that was used to cover the victim's head during the sexual assault. (Doc. 1 at 9, 11, 20-35). Petitioner alleges the blanket/comforter was mentioned in the probable

---

4:18cv383/MW/EMT, 2019 WL 2077855, at *2 (N.D. Fla. Apr. 5, 2019) (same), *adopted by* 2019 WL 2077038 (N.D. Fla. May 10, 2019).

cause affidavit (Doc. 13-1) and collected from the victim's home by law enforcement.  (Doc. 15 at 4).

In Petitioner's first habeas claim, he argues that the state court denied him due process by denying his motion for DNA testing of the blanket/comforter.  (Doc. 1 at 9, 20-35).  He characterizes the prosecutor's failure to test the blanket as the suppression of potentially exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[4]  (*Id.* at 9, 16, 29-30).  Petitioner acknowledges, however, that defense counsel knew about the blanket/comforter and knew that it had not been tested for DNA.  (Doc. 1 at 29; Doc. 15 at 5).[5]

This leads to Petitioner's second habeas claim.  He claims that the prosecutor and defense counsel violated *Giglio v. United States*, 405 U.S. 150 (1972) by affirming on the record at the plea hearing that they were familiar with the physical evidence in the case, and there was no possibility that DNA testing of that evidence could exculpate Petitioner.[6]

---

[4] A *Brady* violation occurs when the State fails to disclose evidence that is "favorable to the accused."  *United States v. Bagley*, 473 U.S. 667, 675 (1985).

[5] Indeed, Petitioner states that he is not making a claim of newly discovered evidence.  (Doc. 1 at 28).

[6] "*Giglio* error [is] a species of *Brady* error."  *Ford v. Hall*, 546 F.3d 1326, 1330-31 (11th Cir. 2008).  *Giglio* error occurs when evidence that was

(Doc. 1 at 11, 26-30; Doc. 13-18 at 14; Doc. 15 at 4-6). Petitioner claims
that these affirmations were false. He says that if the blanket/comforter
had been tested, and if sexual battery occurred as the victim described,
then the comforter would have been "flooded" with hair particles, bodily
fluids, or other DNA. (Doc. 1 at 20-25). Petitioner also asserts that
testing may have revealed the presence of DNA from the victim's mother
or an unknown male. (*Id.* at 25). Of course all of this is speculation,
because Petitioner admits that DNA testing was never done. Indeed,
that is the reason he sought postconviction DNA testing.

The problem for Petitioner with respect to the later trigger in
§ 2244(d)(1)(D) is that when he accepted the plea agreement, he knew
about the evidence in the case. When he signed the plea agreement, he

---

undisclosed to the defense demonstrates that the prosecution's case
included perjured testimony and that the prosecution knew, or should
have known, of the perjury. *Ford*, 546 F.3d at 1330-31.

There is no *Giglio* or *Brady* violation here. That is because defense
counsel knew about the blanket/comforter, knew that it had not been
tested for DNA, and had equal access to obtaining DNA testing.
*Hammond v. Hall*, 586 F.3d 1289, 1308-09 (11th Cir. 2009) (holding that
petitioner's *Giglio* claim failed because the evidence was known by the
defense); *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1315 n. 4
(11th Cir.2005) (there is no suppression for *Brady* purposes if the defense
knew of the information or had equal access to obtaining it).

affirmed that he and defense counsel had reviewed the evidence. (Doc.

13-6 at 2). That evidence included the blanket/comforter collected from

the scene of the sexual assault and disclosed to defense counsel during

discovery. (Doc. 1 at 29). Further, Petitioner knew that the blanket had

not been tested for DNA (or if he did not know whether it had been tested,

he simply could have asked during discussions with defense counsel or

during the plea hearing). Petitioner himself affirmed, both in the plea

agreement and at the plea hearing, that he was not aware of any physical

evidence that could be tested for DNA and could show that he was

innocent of the charge. (Doc. 13-6 at 2; Doc. 13-18 at 14).

Petitioner knew prior to the date his judgment became final that

the blanket/comforter had not been tested for DNA. Thus, he is not

entitled to the benefit of the later start date for the one-year limitations

period under § 2244(d)(1)(D). As a result, the trigger for the one-year

limitations period was the final date of the judgment, January 13, 2017.

> **2.    The state court's correction of the order of sex offender probation and the order designating Petitioner a sexual predator did not restart the federal clock.**

Petitioner argues that the one-year limitations period restarted on

September 24, 2021, when the state court ordered correction of the

probation order to reflect that Petitioner entered a no contest plea instead of a guilty plea.

That argument is without merit. The federal limitations period runs from "the date the judgment pursuant to which the petitioner is in custody becomes final." *Ferreira v. Sec'y*, 494 F.3d 1286, 1288 (11th Cir. 2007). Although a new judgment that results from resentencing restarts the one-year clock, *see id.* at 1292-93, the trial court did not resentence Petitioner on September 24, 2021. Instead, the court simply ordered correction of a scrivener's error in the probation order to reflect the correct nature of Petitioner's plea (no contest, instead of guilty).

The order of September 24, 2021, did not authorize a new judgment, impact the original judgment or sentence, or give the Department of Corrections any new authority to imprison or supervise Petitioner. For that reason, it did not restart the federal limitations clock. Ample precedent supports that conclusion.[7] Accordingly, the Court rejects

---

[7] *See, e.g., Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321, 1326-27 (11th Cir. 2017) (holding that an order granting petitioner's motion to correct sentence did not qualify as a new judgment because the state court never issued a new prison sentence to replace the original sentence and never issued a new judgment authorizing petitioner's confinement); *see also Davis v. Sec'y, Dep't of Corr.*, No. 21-10171-A, 2021 WL 1567343, at *2 (11th Cir. Apr. 21, 2021) (holding that state court's order amending

Petitioner's argument that the federal clock restarted on September 24,

2021.

The Court similarly rejects the argument that the trial court's order

correcting a scrivener's error in the order declaring Petitioner a sexual

predator restarted the federal clock.  (*See* Doc. 15 at 2).[8]  In November of

petitioner's sentence to reflect that he would serve a five-year term of
probation did not restart AEDPA limitations period because the order did
not impose a new sentence or authorize the DOC to take any action as to
petitioner's sentence; rather, it merely clarified that petitioner would
serve a five-year term of probation, consistent with court's oral
pronouncement of sentence, which controlled over the written sentencing
document); *Booth v. Sec'y, Fla. Dep't of Corr.*, 729 F. App'x 861, 862-63
(11th Cir. 2018) (holding that trial court's order authorizing a
"ministerial correction" of petitioner's sentences to reflect that they ran
concurrently, not consecutively, did not restart the federal clock because
the order did not authorize petitioner's confinement, nor did it vacate any
of his sentences and replace them with new ones); *Cazun v. Fla. Att'y
Gen. and Sec'y, DOC*, No. 2:17cv293/JES/NPM, 2021 WL 795504, at *1,
3 (M.D. Fla. Mar. 2, 2021 (holding that correction of order of sex offender
probation to remove reference to Jessica Lunsford Act did not restart the
AEDPA clock); *Davis v. Florida*, No. 5:17cv112/MCR/CAS, 2018 WL
3577351, at * 4 (N.D. Fla. June 20, 2018) (holding that amendment of
judgment to reflect the correct degree of the crime indicated at
petitioner's plea hearing was not the equivalent of a "new judgment" that
would trigger a new AEDPA limitations period), *adopted by* 2018 WL
3574936 (N.D. Fla. July 24, 2018).

[8] Petitioner characterizes the sexual predator designation as "newly
discovered evidence" (Doc. 15 at 2).  That is disingenuous because
Petitioner attended the plea hearing where the parties specifically
discussed that his plea required his designation as a sexual predator.
(Doc. 13-18 at 18).

2016, trial court issued an order declaring Petitioner a sexual predator. (Doc. 13-7).   The order contained a scrivener's error in the date—it included the month and year but not the day.  (*Id.*).  Nevertheless, the clerk of court filed the order on November 7, 2016.  (*Id.*).  On December 10, 2019, the court issued a corrected order designating Petitioner a sexual predator and dated the order *nunc pro tunc* to November 7, 2016. (Doc. 13-11).

Petitioner's construed argument that the corrected order restarted the federal clock is without merit for the reasons previously discussed. The order declaring him a sexual predator did not authorize a new judgment, affect the original judgment and sentence, or give the DOC any new authority to imprison or supervise Petitioner.  For these reasons, it did not restart the federal limitations clock.

> **3.    Petitioner filed his federal petition after the one-year limitations period expired.**

Having determined that Petitioner's judgment became final on January 13, 2017, the one-year limitations clock started ticking the next day, on January 14, 2017.  *See* Fed. R. Civ. P. 6(a) (stating that when computing a time period for the occurrence of an event specified by the law, the Court should "exclude the day of the event that triggers the

period"). The clock stopped one year later, on January 14, 2018. *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that limitation period should be calculated according to "anniversary method," under which limitation period expires on anniversary of date it began to run).

Petitioner did not file his § 2254 petition on or before January 14, 2018. He also did not file any postconviction motions in state court within that time and, therefore, he is not entitled to statutory tolling under § 2244(d)(2).[9] *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Petitioner filed his § 2254 petition on January 20, 2023—nearly five years after it should have been filed. (Doc 1 at 1). Thus, his petition was untimely.

---

[9] That subsection provides, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ." 28 U.S.C. § 2244(d)(2).

**B.    Petitioner has not satisfied the "fundamental miscarriage of justice" exception to the time bar.**

Petitioner asserts that the Court's failure to consider his habeas claims on the merits would result in a fundamental miscarriage of justice because is actually innocent.  (Doc. 1 at 16; Doc. 15 at 4-8).  He asserts that DNA testing of the blanket/comforter will prove his innocence.  (Doc. 15 at 4).

The Supreme Court has held that actual innocence serves as a gateway through which a petitioner may obtain review of an untimely habeas petition. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  In this context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).  To pass through the actual innocence gateway, a petitioner must satisfy the standard articulated in *Schlup v. Delo*, 513 U.S. 298 (1995).  *See McQuiggin*, 569 U.S. at 386 (applying the *Schlup* standard to untimely § 2254 petitions).  The *Schlup* standard requires a petitioner to show "that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable a doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (internal quotations omitted).  The *Schlup* standard is a "demanding" one that is only met "in

the extraordinary case." *Id.* at 536. Thus, it is "rare" for a petitioner to obtain review of an untimely habeas petition through the actual innocence gateway. *McQuiggin*, 569 U.S. at 386.

Here, Petitioner does not allege that any new, credible evidence actually exists. Instead, he speculates that new evidence *may be discovered* if the blanket/comforter that covered the victim's head was tested for DNA. The *Schlup* standard requires the petitioner to present existing new evidence, not just the possibility of such evidence. Petitioner has not come forward with any evidence that satisfies that standard. For that reason, he may not obtain review of his untimely habeas claims through the actual innocence gateway. *See Hammond v. Warden*, No. 14-12858-C, 2015 WL 13928999, at *4 (11th Cir. Sept. 1, 2015) (rejecting petitioner's argument that the untimeliness of his § 2254 petition should be excused because DNA testing would reveal his actual innocence because his argument was speculative, as there was no certainty that DNA evidence could be retrieved from the items of physical

evidence or that DNA evidence would inculpate another person or exculpate petitioner).[10]

## III.  Conclusion

For the reasons above, Petitioner's 28 U.S.C. § 2254 petition for a writ of habeas corpus should be dismissed as untimely.

## IV.  Certificate of appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

---

[10] There are numerous other cases reaching the same result. *See, e.g.*, *Simmons v. McDonough*, No. 3:07cv390/LC/EMT, 2008 WL 686965, at *5 (N.D. Fla. Mar. 12, 2008) (rejecting petitioner's argument that his untimely § 2254 petition should be reviewed under the "actual innocence" exception where he asserted that DNA testing would exonerate him but did not proffer any evidence that testing had actually been done and that the results exculpated him); *Larner v. McDonough*, No. 3:05cv402/RV/MD, 2006 WL 3747298, at *4 (N.D. Fla. Oct. 16, 2006) (same).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327). Petitioner cannot make that showing in this case. Therefore, the undersigned recommends denying a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if either party wishes to submit arguments on the issue of a certificate of appealability that party may do so in an objection to this Report and Recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1.    Respondent's motion to dismiss (Doc. 13) be **GRANTED**.

2.     The 28 U.S.C. § 2254 petition for a writ of habeas corpus (Doc.

1) be **DISMISSED with prejudice** as untimely.

3.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 21st day of June 2024.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.